The Honorable Courtney Sheppard State Representative 203 West Main El Dorado, Arkansas 71730
Dear Representative Sheppard:
This is in response to your request for an opinion on three questions posed by an El Dorado medical doctor who is also a member of the board of directors of the "Union County Interfaith Health Services, Inc.," an Arkansas nonprofit corporation, with federal tax exempt status. The facts stated reflect that the major purpose of the nonprofit corporation is to "increase availability and accessibility of affordable primary health care specifically targeted to the population of working uninsured people and their families." The questions posed concern the operation of a medical clinic, which I assume is run by the nonprofit corporation. It is noted that there are approximately twelve physicians who provide volunteer services for the clinic. The clinic charges each patient eight dollars per visit which helps fund medicine and supplies for the clinic. The questions posed are as follows:
 1. Does a volunteer physician establish a traditional doctor-patient relationship with a patient who comes to the clinic for care? For instance, if this patient later presented to the emergency room with a similar or different complaint, would the volunteer physician who may have seen this patient three months ago be responsible for his continued medical care?
 2. Would a volunteer physician be liable for civil damages for any act or omission resulting from rendering those medical services at the clinic?
 3. Would retired licensed physicians need to have liability insurance in order to provide volunteer services for our clinic?
In response to your first question, my research has failed to disclose any applicable Arkansas statute or case law addressing this question. Although there are a number of case law decisions from other states addressing when, and under what circumstances, the doctor-patient relationship is created, I have found no cases with facts similar to the ones you outline which would be of help in answering your question or predicting how the Arkansas Supreme Court would resolve the issue. It appears that the question of when the doctor-patient relationship is created is a question of fact to be decided based upon all the surrounding circumstances. See, e.g., 70 C.J.S. Physicians and Surgeons,
§ 58. The question of whether such a relationship is created under the facts you describe, for purposes of obligating the physician to provide continued treatment, must be ultimately decided by the Arkansas Supreme Court. It would be advisable, however, to consult any applicable rules and regulations of the Arkansas State Medical Board which may govern the question.
In response to your second question regarding whether a volunteer physician could be held liable for damages from the services he or she renders at the clinic, it is my opinion that the answer depends upon several factors. It is my opinion that a retired licensed physician will not be subject to civil damages provided certain conditions are met. It is also my opinion, however, that a licensed physician who is not retired, may be subject to civil damages or liability, but, this liability may, if certain conditions are met, be limited under the applicable statute to the extent of any liability insurance.
As an initial matter, it will be helpful to set out the three most relevant Arkansas statutes governing this question. The first such statute is the so-called "Good Samaritan" law, found at A.C.A. §17-95-101 (Repl. 1995). It provides in pertinent part that:
 (a) Any person licensed as a physician or surgeon under the laws of the State of Arkansas or any other person, who, in good faith, lends emergency care or assistance without compensation at the place of an emergency or accident, and who was acting as a reasonable and prudent person would have acted under the circumstances present at the scene at the time the services were rendered, shall not be liable for any civil damages for acts or omissions performed in good faith.
This "Good Samaritan" statute, however, only grants immunity from liability for services provided in emergency situations at the place ofan emergency or accident. This statute, therefore, would not grant any immunity from liability in the situation you describe (providing services at a clinic).
The second relevant statute is A.C.A. § 17-95-108, recently enacted in 1995. It provides in pertinent part that:
 (a) Retired physicians and surgeons who are still licensed to practice medicine by the Arkansas State Medical Board under the laws of the State of Arkansas, and who render medical services voluntarily and without compensation to any person at any free or low-cost medical clinic located in the State of Arkansas and registered by the State Board of Health, which accepts no insurance payments and provides medical service free of charge to persons unable to pay or provides medical services for a nominal fee, shall not be liable for any civil damages for any act or omission resulting from the rendering of such medical services, unless such act or omission was the result of such licensee's gross negligence or willful misconduct.
 (b) The State Board of Health is empowered to adopt such rules and regulations as it may determine necessary to provide for the registration of free or low-cost medical clinics under this section; provided, such rules and regulations shall require that each person, patient, or client to whom medical services are provided has been fully informed before any treatment by the physician providing the services or by the staff of the medical clinic of the immunity from civil suit provisions of this section, and has acknowledged that fact in writing on a form approved or designated by the Department of Health.
* * *
 (d) The provisions of this section shall not affect the Arkansas Volunteer Immunity Act, § 16-6-101 et seq.
Thus, to the extent your question inquires as to licensed retired
physicians, the statute above provides them immunity for civil damages resulting from ordinary negligence (but not for gross negligence or willful conduct), as long as the clinic is registered by the State Board of Health, the clinic obtains a signed form from the patients acknowledging the immunity, and compliance is had with all the other provisions of the statute and applicable regulations of the State Board of Health.[1]
The statute above, however, does not apply to physicians and surgeons who are not retired, but who still actively practice medicine. It thus provides no immunity to such active physicians. Another statute, however, is relevant to such physicians. It is the "Arkansas Volunteer Immunity Act," which is cited in subsection (d) above. That act, which is codified at A.C.A. §§ 16-6-101 to -105, provides in pertinent part that:
 A qualified volunteer shall not be liable in damages for personal injury or property damage sustained by one who is a participant in, or a recipient, consumer, or user of the services or benefits of a volunteer by reason of any act of omission of a qualified volunteer in connection with the volunteer except as follows:
* * *
 (4) Where the qualified volunteer negligently performs professional services extended to an individual, which the qualified volunteer is licensed under state law to perform, including, but not limited, to legal, medical, engineering, and accounting services. If the volunteer agency either provides or requires its professional volunteers to carry professional liability insurance in an amount customarily carried by a member of the profession involved and if recipients of the professional services are clearly informed of the amount of coverage provided and the limitation of liability arising from the coverage, liability for ordinary negligence in rendering professional services shall be limited to the amount of coverage available or the amount required by the agency, whichever is larger. This exception does not apply to nurses or similar health care providers rendering health care services or other professionals rendering professional services to a government entity, business, or volunteer agency.[2]
A.C.A. § 16-6-104(4).
According to the language above, medical professionals, including physicians and surgeons, licensed by law to practice their professions, are not immunized from liability under the "Arkansas Volunteer Immunity Act." If, however, liability insurance in a customary amount is maintained by the physician or provided by the nonprofit agency, any potential liability of the physician for ordinary negligence is limited to the amount of insurance available or required, whichever is larger. This is true assuming that the patients are "clearly informed" of the limitation of liability, and all other requirements of the subchapter are met.
In response to your third question, it appears, from the conclusions reached above, that retired licensed physicians are not required to carry liability insurance in order to provide volunteer services for the clinic. They will be immune from liability for ordinary negligence under A.C.A. § 17-95-108, if all the conditions of that statute are met and it is constitutional. There is no prohibition against those retired physicians carrying such insurance, however, or against the nonprofit agency for procuring it on their behalf, if it deems necessary.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] The constitutionality of this provision and A.C.A. § 16-6-105
(discussed infra), in light of Arkansas Constitution, art. 2, § 13 or art. 5, § 32, has not yet been addressed by the Arkansas Supreme Court.Cf. White v. City of Newport, No. 96-1 (delivered November 26, 1996) (upholding the municipal tort immunity statute against a similar challenge and holding that the test under art. 2, § 13 and art. 5, § 32 is whether the legislature acted reasonably when it abolished or diminished a right to recover damages).
[2] The proviso found in the last sentence addresses services provided to organizations, rather than to individuals, and would presumably not be relevant to your questions, are they contemplate the provision of services to individual patients.